IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EUCLID CHEMICAL COMPANY, | ) | CASE NO. 1:05 CV 80 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| VECTOR CORROSION | ) | |
| TECHNOLOGIES, INC., *et al.* | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendants. | ) | |

## I. Introduction

This matter comes before the Magistrate Judge under 28 U.S.C. § 636(b)(1)(A) for a hearing and determination of certain discovery disputes referred by District Judge Christopher Boyko.[1]

These disputes involve the attempt of the defendants, Vector Corrosion Technologies, Inc. and David Whitmore (collectively, "Vector"), to obtain discovery purportedly related to two testifying experts designated by the plaintiff, Euclid Chemical Company. Vector served subpoenas with a commend to produce documents upon these experts[2] and a second request for production upon Euclid.[3]

---

[1] ECF # 61.

[2] ECF # 66, Ex. B.

[3] *Id.*

After the referral by the District Judge, the Magistrate Judge held a telephonic status conference.[4] During that conference, Vector orally moved to compel production of the documents identified in the subpoenas and in the request for production. Euclid countered with an oral motion for a protective order.

The Magistrate Judge requested supplemental briefs.[5] Euclid filed a brief regarding expert discovery issues,[6] and Vector filed a memorandum in support of its motion to compel documents.[7]

The pending discovery dispute presents a single, overarching issue for decision:

> Civil Rule 26(a)(2)(B) requires disclosure of all information a testifying expert witness considered in forming his opinion. The courts have interpreted "considered" broadly to include anything authored, received, read, or reviewed by the expert, relating to the opinion expressed, before or in connection with forming the opinion. Euclid withholds information relating to the opinions of its testifying experts on the grounds that they did not "consider" that information. Is that information discoverable under Rule 26(a)(2)(B)?

As fully discussed below, the Court concludes that certain information and data withheld by Euclid may be discoverable under Rule 26(a)(2)(B). the Court will order Euclid to review with its experts the disclosures and production previously made and to supplement them, as appropriate, consistent with this memorandum and opinion.

---

[4] ECF # 63.

[5] *Id.*

[6] ECF # 65.

[7] ECF # 66.

## II. Relevant Facts and Proceedings

### A. Nature of the case and the course of proceedings

This is a patent case brought by Euclid to declare certain patents held by Vector void.[8] Vector has answered asserting the validity of its patents and has counterclaimed against Euclid for infringement.[9]

Under an amendment to the case management plan, the Court ordered fact discovery completed by December 15, 2006.[10] Euclid was to produce its expert reports by January 16, 2007.[11] Expert discovery closed on March 16, 2007.[12]

As ordered, Euclid served its expert reports and disclosures under Federal Rule of Civil Procedure 26(a)(2)(B) on January 16, 2007.[13] Euclid identified as its testifying experts James Bushman and Jack Bennett.

---

[8] ECF # 1.

[9] ECF # 7.

[10] Minutes of proceedings (non-document) of November 3, 2006.

[11] *Id.*

[12] *Id.*

[13] ECF # 66, Exs. A-1 (James B. Bushman, P.E.) and A-2 (Jack E. Bennett).

**B. The testifying experts and their reports and disclosures**

Euclid retained Bushman, a licensed corrosion engineer, specifically for the purpose of testifying in this case. By way of overview, Bushman opined that Euclid's product did not infringe Vector's patents and that those patents were not valid.[14]

Bennett is the inventor and original patent holder of the product that Vector claims infringed its patents – Sentinel GL.[15] He has worked as a consultant for Euclid since 2000.[16] Bennett testified on deposition that Euclid had asked him to be a testifying expert witness "possibly two or three months" before the date of his expert report in January of 2007.[17]

Bushman provided with his expert's report a list of documents used "in forming his expert opinions."[18] In the body of his expert's report, Bushman made the following representations regarding the sources of information for his opinions:

> In preparing this report, I have reviewed the documents listed in SCHEDULE C hereto, and I have further relied upon my own knowledge on the subject matter and my own collection of written materials relating to the subject matter.[19]

* * *

---

[14] ECF # 66, Ex. A-1.

[15] ECF # 65 at 4; ECF # 66 at 2-3.

[16] ECF # 66 at 3; ECF # 65, Ex. D (selections from Bennett deposition) at 118.

[17] ECF # 65, Ex. D. at 110.

[18] ECF # 66, Ex. A-1.

[19] ECF # 66, Ex. A-1 (report of James Bushman) at ¶ 5.

> I have gained an understanding of the details of the structure, composition and manufacture of the Sentinel GL product as well as other relevant information from discussions with Mr. Jack Bennett, examination of the product brochure(s), and visual inspection of the product.[20]

Bennett provided with his report a list of documents "used" and made the following representation:

> In preparing this report, I have reviewed the documents listed in SCHEDULE B hereto, and I have further relied upon my own knowledge on the subject matter and my own collection of written materials relating to the subject matter.[21]

On deposition, when questioned about the documents "used" in preparing his report, Bennett made the following statements:

> Q. Did you yourself do a list of all the things that you used in the drafting of your report and, therefore, the adoption of Bushman's report?
>
> A. My list would be much more extensive over the years. I mean, I have acquired knowledge from dozens of sources, handbooks, papers.
>
> Q. Your own personal experiences?
>
> A. My own personal library and professional experiences, yes.
>
> Q. All right. So is it appropriate for me to say that the information used by you in the drafting of your report, and, therefore, within the adoption of Mr. Bushman's report, is not adequately reflected under schedule B?
>
> A. There are certainly, within my knowledge and my professional experience, there's more than is down on schedule B, yes. But, I mean, that's within my own personal knowledge. We'd have to go through each of the issues, but it may well be, and from looking at the list probably true, that I could come to all the conclusions that I did and all the conclusions that Bushman did with only the information on schedule B, yes.

---

[20] *Id.* at ¶ 10.

[21] ECF # 66, Ex. A-2 (report of Jack Bennett) at ¶ 5.

> Q. But for me to understand the basis for those conclusions, where you derive your conclusion from, because I'm not you, I would have to know all of those things; would you agree with me?
>
> MS. FRY: Objection, asked and answered.
>
> A. Well, I have 40 years of professional experience and all of that professional experience goes into my knowledge and my assessment of what we're talking about here.
>
> Q. Your experience and your professional work, would you agree with me, too?
>
> A. Yes, yeah.
>
> Q. And that all goes into the drafting of the report and your adoption of Bushman's report?
>
> MS. FRY: Objection as to form.
>
> A. Yes, yes.[22]

**C. Vector's discovery directed to the testifying experts**

After receiving the Bushman and Bennett expert reports, Vector issued subpoenas for their depositions identifying documents to be produced at those depositions.[23] The attachment to each subpoena is substantially identical. Most of the paragraphs set out in these attachments make specific reference either to the expert report or the deponent's work as an expert. One of the paragraphs, however, is broader and makes no such reference:

> Any other items at all relating to this lawsuit or otherwise relating to any controversy between The Euclid Chemical Company or any of its related

---

[22] ECF # 65, Ex. D (Bennett deposition) at 138-40.

[23] ECF # 66, Ex. B.

entities and David Whitmore, Vector Corrosion Technologies or any of its related persons or entities.[24]

Additionally, Vector served a second request for production upon Euclid that sought documents related to the expert's reports or to the work of Bushman and Bennett as experts.[25]

## III. Analysis

### A. What does Federal Rule of Civil Procedure 26(a)(2)(B) require and how does the duty to disclose under that rule affect privilege?

Federal Rule of Civil Procedure 26(a)(2)(B) requires that a "witness ... retained ... to provide expert testimony" produce a written report containing "all opinions to be expressed and the basis and reasons" therefor and to disclose "the data and information considered by the witness in forming these opinions."

Whatever uncertainty may have existed about the effect of this duty to disclose upon data or information claimed protected by privilege, the Sixth Circuit eliminated that uncertainty with its 2006 opinion in *Regional Airport Authority v. LFG, LLC*.[26] The Court held that Rule 26(a)(2)(B) requires disclosure of all data and information considered by testifying experts, including that otherwise privileged.[27] As one district court recently

---

[24] *Id.* Attachments to Bushman and Bennett Subpoenas at ¶ 6.

[25] ECF # 66, Ex. B (Second Request for Production).

[26] *Reg'l Airport Auth. v. LFG, LLC*, 460 F.3d 697 (6th Cir. 2006).

[27] *Id.* at 715-16.

expressed it, Rule 26(a)(2)(B) trumps privilege.[28] The Rule 26(a)(2)(B) disclosure duty prevails with equal force over claims of attorney-client,[29] work product,[30] and common interest[31] privilege.

The supplemental briefs of both parties argue privilege. But, at the end of the day, whether any privilege otherwise attaches to the documents at issue makes no difference. If a testifying expert "considered" a document in forming his opinion, then it must be produced.

For purposes of resolving this dispute, the Court must decide the parameters of the term "considered" as used in the Rule and determine what documents currently in dispute come within those parameters.

### B. What are the parameters of the term "considered" as used in Rule 26(a)(2)(B)?

In interpreting Rule 26(a)(2)(B) and giving definition to the term "considered" used therein, the courts have endeavored to adopt a bright-line rule, avoiding uncertainty, and reject reliance on analysis of the expert's "subjective mental processes."[32] Accordingly, even

---

[28] *Bitler Inv. Venture II, LLC v. Marathon Ashland Petroleum LLC*, No. 1:04-CV-477, 2007 WL 465444, at *3 (N.D. Ind. Feb. 7, 2007).

[29] *Id.*, at *2-3.

[30] *Id.*, at *4-5.

[31] *Id.*, at *2-3.

[32] *Id.* at *6.

if the expert avers under oath that he did not actually consider certain materials in forming his opinion, that will not control.[33]

Rather, the courts have embraced an objective test that defines "considered" as anything received,[34] reviewed,[35] read,[36] or authored[37] by the expert, before or in connection with the forming of his opinion,[38] if the subject matter relates to the facts or opinions expressed.[39] All ambiguities must be resolved in favor of discovery.[40]

---

33 *Western Resources, Inc. v. Union Pacific R.R. Co.*, No. 00-2043-CM, 2002 WL 181494, at *9 (D. Kan. Jan. 31, 2002).

34 *Reg'l Airport Auth.*, 460 F.3d at 715-16; *Bitler Inv.*, 2007 WL 465444, at *6; *Western Resources*, 2002 WL 181494, at *16; *Trigon Ins. Co. v. United States*, 204 F.R.D. 277, 282 (E.D. Va. 2001).

35 *Bitler Inv.*, 2007 WL 465444, at *6; *United States v. Am. Elec. Power Serv. Corp.*, Nos. 2:99-CV-1182 and 2:99-CV-1250, 2006 WL 3827509, at *1 (S.D. Ohio Dec. 28, 2006); *Western Resources*, 2002 WL 181494, at *9; *Trigon Ins.*, 204 F.R.D. at 282; *Johnson v. Gmeinder*, 191 F.R.D. 638, 649 (D. Kan. 2000).

36 *Am. Elec. Power*, 2006 WL 3827509, at *2; *Western Resources*, 2002 WL 181494, at *9; *Johnson*, 191 F.R.D. at 649.

37 *Western Resources*, 2002 WL 181494, at *16.

38 *Am. Elec. Power*, 2006 WL 3827509, at *2; *Johnson*, 191 F.R.D. at 647.

39 *Western Resources*, 2002 WL 181494, at **16, 21.

40 *Am. Elec. Power*, 2006 WL 3827509, at *2; *Western Resources*, 2002 WL 181494, at **13, 18.

Although an expert's representation as to whether or not he considered a document is not controlling,[41] his testimony that he did not receive, read, review, or author a document will negate discovery absent persuasive evidence to the contrary.[42]

***1. "Pure" testifying experts***

The above parameters apply straightforwardly to experts retained exclusively for trial testimony. Ordinarily, such an expert will receive substantially all the data and information "considered" in forming his opinion from the litigant or from his attorney.[43] Everything the expert so receives is discoverable, regardless of privilege[44] and regardless of whether the expert found the data or information helpful in forming the opinion.[45]

If the expert maintains a file relating to his engagement, everything in that file is discoverable.[46] "Marching orders" from counsel are discoverable.[47] Data or information received from a non-testifying expert must be produced.[48]

---

[41] *Western Resources*, 2002 WL 181494, at *9.

[42] *Amway Corp. v. The Procter & Gamble Co.*, 2001 WL 1877268, at *1 (W.D. Mich. 2001 Apr. 17, 2001).

[43] *Am. Elec. Power*, 2006 WL 3827509, at *2.

[44] *Reg'l Airport*, 460 F.3d at 715-16.

[45] *Western Resources*, 2002 WL 181494, at *9.

[46] *Bitler Inv.*, 2007 WL 465444, at *6.

[47] *Western Resources*, 2002 WL 181494, at **15-16.

[48] *Trigon Ins. Co.*, 204 F.R.D. at 242.

***2. Testifying experts who are also employees or consultants***

The parameters are not so clear where the testifying expert is also an employee of the litigant or previously served as a consultant or non-testifying expert. But for the person's designation as a testifying expert, privileges might apply. The courts have made clear, however, that a testifying expert cannot fall back upon his status as an employee or consultant to defeat appropriate Rule 26(a)(2)(B) discovery.

Two cases involving persons engaged by the litigant in other capacities before their designation as testifying experts provide useful guidance – *Western Resources, Inc. v. Union Pacific Railroad Co.*[49] and *United States v. American Electric Power Service Corporation*.[50]

In *Western Resource*s, the plaintiff, Western Resources, retained the expert in question as a consultant/non-testifying expert in anticipation of litigation.[51] Six years later, Western Resources converted the expert from consulting to testifying status.[52] In response to extensive discovery requests from the defendant, Western Resources claimed privilege for certain documents relating to his expert's "separate and distinct capacities" as a "consulting expert retained in anticipation of litigation," and "a consulting expert retained for purposes other than anticipation of litigation."[53] After extensive discussion and analysis, the Court

---

[49] *Western Resources*, 2002 WL 181494.

[50] *Am. Elec. Power,* 2006 WL 38275409.

[51] *Western Resources*, 2002 WL 181494, at *1.

[52] *Id.*

[53] *Id.*, at 3.

concluded that, in light of the principles applicable to discovery of testifying experts discussed above, materials authored, received, read, or reviewed by the expert, dating back to the inception of his work as a consultant and/or non-testifying expert in anticipation of litigation, must be disclosed as "considered" by the expert under Rule 26(a)(2)(B).[54]

In *American Electric Power*, the expert in question was an employee of the defendant, American Electric Power. In his capacity as an employee, the expert had reviewed a report in its entirety, which American Electric Power produced in redacted form.[55] The expert represented that he had reviewed the document only in its redacted form in preparing his expert report.[56]

Relying heavily on the principles discussed in the *Western Resources* case, the *American Electric Power* court ordered production of the report in its unredacted version. In doing so, the Court held that the self-serving declaration of the expert as to what he considered cannot control.

> Because the redactions in question were made to a report which he [the expert] deemed significant enough to rely on in formulating his expert opinion, the Court concludes that they touch on this same subject as his opinion. As the other courts which have dealt with this issue have noted, the party disclosing the expert may not simply rely upon a self-serving declaration of the expert himself that in formulating that opinion he neither considered nor relied upon certain information which he reviewed or which is relevant to the subject matter of his opinion. *** The only way in which plaintiffs can effectively

[54] *Id.*, at *10.

[55] *Am. Elec. Power*, 2006 WL 38275409, at *1.

[56] *Id.*

> cross-examine his [the expert] concerning his opinion is to see a full copy of their report.[57]

In handing down this ruling, Magistrate Judge Kemp struck the following cautionary note regarding a discovery of "mixed experts:"

> There are certain difficulties engendered by a broad application of the *Western Resources* rationale. Especially for an employee who has reviewed a vast number of documents over the course of a long career, going back and ferreting out all documents related to the subject-matter of an expert opinion could be extremely burdensome and would likely produce an extraordinary amount of irrelevant or unhelpful information. Additionally, by deeming any privileges attaching to all such documents to have been waived, the Court would also intrude significantly upon the privilege involved. In fact, were such a rule to be applied in wholesale fashion, it might discourage an employer from ever designating an employee as a testifying expert because of the fear that all manner of privileged documents and communications would thereby be subject to disclosure simply because they relate in some way to the subject matter of the witness' testimony.[58]

Because the case at hand involved only one document, the court did not further elaborate upon possible temporal or other limitations in mixed expert cases.

**C. Rule 26(a)(2)(B) parameters applied**

***1. James Bushman***

Bushman is an expert retained for purposes of providing opinions for use at trial. Under the parameters set out above anything he received from Euclid, its attorneys, or his co-expert, Bennett, in connection with this litigation is discoverable. His entire file on this case must be produced. Additionally, if during the time of his engagement he read or

---

[57] *Id.*, at 3.

[58] *Id.*

reviewed anything relating to the facts or opinions expressed, from whatever source, he must disclose it. And he must turn over everything he authored relating to that subject matter.

***2. Jack Bennett***

Jack Bennett has worked as a consultant for Euclid since 2000 and was approached to be a testifying expert sometime in 2006. As discussed above, his previous work as a consultant/non-testifying expert does not necessarily shield from disclosure that which he received, read, reviewed, or authored, relating to the facts or opinion expressed, before or in connection with the forming of his opinions. Without question, he and Euclid cannot avoid discovery because data or information "considered" would otherwise be privileged.

The primary concern as to Bennett is temporal. Because his work for Euclid has involved the development of Sentinel GL, and Bennett is the inventor and original patent holder for that product, it cannot be said that everything he did as a consultant regarding patent validity and infringement issues before Euclid approached him to be a testifying expert is off limits. In *Western Resources* on substantially similar facts, the court held that the disclosure obligation extended to the entire time period that the expert served as a consultant in anticipation of litigation. A like ruling must follow here.

Euclid received Vector's cease and desist letter on December 21, 2004. Bennett was serving as a consultant as of that date. Accordingly, any data or information that Bennett received, reviewed, read, or authored, relating to the subject matter of the facts or opinions set out in his expert's report, on or after December 21, 2004, must be disclosed and produced.

This ruling does not constitute a license for a fishing expedition. An expert's testimony that he did not consider a document or data in forming his opinion carries no weight.[59] His testimony that he did not receive, read, or review the same during the relevant time period will receive deference absent evidence to the contrary.[60] For example, at issue here are attorney opinions that Bennett received at some point regarding the validity of his patents. His protestations that he did not consider these whatsoever in forming his opinions in this case cannot defeat their disclosure. If, however, he maintains that he unequivocally did not receive, read, or review those opinions in the relevant time period, then the attorney-client privilege might not be waived. All ambiguities and uncertainties must be resolved in favor of discovery, however.

As for Bennett's general remarks on deposition about his expertise, these must likewise be placed in perspective. An analogy to which the Court (and hopefully counsel) can relate involves an attorney opinion to a client about personal jurisdiction over a claim. The knowledge and expertise for such an opinion will look for its foundation to the attorney's law school training and his work on past cases after law school graduation. In the Rule 26(a)(2)(B) sense, however, this does not mean that the attorney considered his casebook, class notes, or course outline from his civil procedure course; a bench memorandum on personal jurisdiction prepared for a judge during a clerkship; or briefs filed

---

[59] *Am. Elec. Power*, 2006 WL 3827509, at *3.

[60] *Amway*, 2001 WL 1877268, at *1.

in other cases defending or opposing jurisdiction. Only if he read and reviewed such archival documents in forming his current opinion are they "considered."

To the instant matter, only to the extent that Bennett read and reviewed books from his library or past work product in doing work relevant to the opinions expressed in this case after December 21, 2004 did he consider such materials.

## IV. Conclusion

Based on the foregoing analyses, Euclid is hereby ordered to review with its experts the disclosures previously made and to supplement such disclosures as necessary consistent with this memorandum and order. Such supplements, and the production of any documents identified in such supplements, must be delivered to counsel for Vector on or before June 5, 2007.

Euclid need produce documents in response to Vector's second request for production only to the extent that such documents were considered by its experts, are no longer in the possession of the expert(s), and are currently in the possession of Euclid or its counsel. Any such production must be delivered to counsel for Vector on or before June 5, 2007.

In light of the ruling herein, Euclid's motion for a protective order and Vector's motion to compel are hereby granted in part and denied in part.

IT IS SO ORDERED.

Dated: May 29, 2007

s/ William H. Baughman, Jr.
United States Magistrate Judge